UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUCKY BREAK WISHBONE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SEARS, ROEBUCK AND CO., a New York corporation, and YOUNG AND RUBICAM INC., a Delaware corporation,<br><br>Defendants. | No. C06-312Z<br><br>ORDER |

This matter comes before the Court on Defendant Sears, Roebuck and Co.'s Motion to Strike the Hillesland Declaration, docket no. 159, at 3-4, and Plaintiff's Motion for Reconsideration of Court's Order of 12/18/07, docket no. 154. Having considered the briefs and declarations in support of and in opposition to the motions, the Court DENIES Defendant Sears, Roebuck and Co.'s Motion to Strike the Hillesland Declaration, docket no. 159, at 3-4, and GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Reconsideration of Court's Order of 12/18/07, docket no. 154.

ORDER  1–

## I. Defendant Sears, Roebuck and Co.'s Motion to Strike the Hillesland Declaration, docket no. 159, at 3-4

Defendant Sears argues that Mr. Hillesland's recent declaration, signed January 4, 2008, is akin to a "sham affidavit" submitted to create issues of fact in avoidance of summary judgment. See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d 1217, 1225 (9th Cir. 2005) ("Under our 'sham' affidavit rule, 'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.') (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)).

When Mr. Hillesland was asked at his deposition, "So how did you – did you have the prototype *mold* in front of you when you made the changes to the graphite on the production mold," he answered, "I don't remember." Rachman Decl., docket no. 160, Ex. 1 (Hillesland Dep.) at 42:8-11 (emphasis added). In Mr. Hillesland's recent declaration, he stated:

> I do not specifically remember whether I had the prototype *mold* in front of me when I was making changes to the graphite electrodes used for making the production wishbone mold. It is likely that I did not have the *mold* in front of me at that time, because it was probably with Lucky Break's factory, being used to make wishbones. However, when I was making the manual alterations to the graphite electrodes used for the production mold, I absolutely had the prototype *electrodes* in front of me, and I did reference those prototype *electrodes* to ensure that I was making the same manual alterations to those electrodes that I had made in producing the prototype wishbone mold.

Hillesland Decl., docket no. 157, ¶¶ 2-3 (emphasis added). Mr. Hillesland's recent declaration statements are consistent with his deposition testimony relating to his failure to remember whether he directly referenced the prototype mold. At his deposition, he was only asked whether he had the prototype mold, not the prototype electrodes, in front of him when making manual alterations to the production electrodes. Defendant Sears argues that Mr. Hillesland should have testified at his deposition that he referenced the prototype electrodes in response to open-ended questions about his process for making the production wishbone. Because Mr. Hillesland was not specifically asked in his deposition whether he referenced

ORDER 2–

the prototype electrodes when making his manual alterations to the production electrodes, he cannot be faulted for not having so testified. Accordingly, the Court DENIES Defendant Sears, Roebuck and Co.'s Motion to Strike the Hillesland Declaration, docket no. 159, at 3-4. **II.   Plaintiff's Motion for Reconsideration of Court's Order of 12/18/07, docket no. 154**

**A.   Standard for Motions for Reconsideration**

"Motions for reconsideration are disfavored.  The Court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."  Local Rule CR 7(h).

**B.   Timeliness of Mr. Hillesland's Declaration, docket no. 157**

Lucky Break argues that it has discovered "new facts that realistically could not have been brought to this Court's attention before now," specifically Mr. Hillesland's reference to the prototype electrodes when making manual alterations to the production electrodes.  Pl.'s Mot. Reconsideration, docket no. 154, at 1.  Defendant Sears responds that Mr. Hillesland's recent declaration should not be considered new evidence because Lucky Break had several opportunities to bring such evidence to the Court's attention.

In Defendants' summary judgment motion, Defendants argued that Lucky Break failed to obtain a valid copyright registration in the prototype wishbone because Lucky Break deposited a copy of the production wishbone, rather than the prototype wishbone, with its copyright registration application in December 2005.  Defs.' Mot. Summ. J., docket no. 87, at 10-11.  In response, Lucky Break did not argue that the deposit copy of the production wishbone was a bona fide copy of the prototype wishbone, and that, as a result, Lucky Break's registration of the prototype wishbone was valid.  Instead, Lucky Break argued that there is no difference in the design between Lucky Break's prototype and production wishbones.  Pl.'s Opp'n, docket no. 105, at 7-8.

ORDER   3–

The Court subsequently focused the parties on the "bona fide copy" issue and case law, noted the implications on the Court's jurisdiction, and requested supplemental briefing. Order of Dec. 4, 2007, docket no. 140, at 13-14, 22 n.10; Minutes of Telephone Conference, docket no. 144. Lucky Break should have submitted the evidence regarding Mr. Hillesland's reference to the prototype electrodes in connection with Lucky Break's supplemental brief, but did not do so. Pl.'s Suppl. Br., docket no. 145.

Now that the Court has ruled against Lucky Break and has concluded that it lacks subject matter jurisdiction over Lucky Break's wishbone copyright claim, see Order of December 18, 2007, docket no. 151, Lucky Break submits the "new" evidence and argues in its motion for reconsideration that "Lucky Break believed that it was not authorized to submit evidence" in connection with the supplemental briefing. Pl.'s Mot. Reconsideration, docket no. 154, at 2. Because there could have been some confusion as to whether new evidence could be submitted in connection with the supplemental briefs, and because this is such a crucial issue that the Court seeks to decide on the merits, the Court declines to reject Mr. Hillesland's recent declaration as untimely.

### C.    Bona Fide Copy

"[T]he registration deposit requirement permits 'bona fide copies of the original work only.'" Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1211 (9th Cir. 1998) (quoting Seiler v. Lucasfilm, Ltd., 808 F.2d 1316, 1322 (9th Cir. 1986)). A "bona fide copy" of an original work "must be virtually identical to the original *and* must have been produced by directly referring to the original." Id. at 1212 (emphasis added).

The Court must determine whether, in light of Mr. Hillesland's recent declaration, the Court should reconsider its prior conclusion that "the production wishbone deposit was not a bona fide copy of the prototype wishbone." Order of December 18, 2007, at 4. The Court based this conclusion on "the absence of any evidence that Mr. Hillesland directly referred to the prototype graphite electrodes, mold or wishbone when he created the production

ORDER  4–

wishbone mold." Id. In other words, the Court based its "not a bona fide copy" conclusion on the second prong of the bona fide copy test. Now, the following testimony from Mr. Hillesland is before the Court: "[W]hen I was making the manual alterations to the graphite electrodes used for the production wishbone mold, I absolutely had the prototype electrodes in front of me, and I did reference those prototype electrodes to ensure that I was making the same manual alterations to those electrodes that I had made in producing the prototype wishbone mold." Hillesland Decl., docket no. 157, ¶ 3. This evidence satisfies the second prong of the "bona fide copy" test.[1] Accordingly, the Court GRANTS IN PART Plaintiff's Motion for Reconsideration, docket no. 154, and concludes that the second "directly refer" prong of the bona fide copy test is met because Mr. Hillesland directly referred to the prototype electrodes, which were used to make the prototype mold and the prototype wishbone, when making the manual alterations to the production electrodes, which were used to make the production mold and the production wishbone.

Next, Lucky Break asks the Court to conclude "that the existing deposit materials are sufficient to support a valid copyright registration." Pl.'s Mot. Reconsideration, docket no. 154, at 3. In order to determine whether the existing deposit materials are sufficient, the Court must address the "virtually identical" issue – i.e., the first prong of the bona fide copy test. In its Order of December 18, 2007, the Court noted that "[t]here are factual disputes as to whether the prototype and production wishbones are 'virtually identical.'" Order of Dec. 18, 2007, at 3. The Court then stated that it "does not reach this [virtually identical] issue because Lucky Break has failed to provide any evidence that Mr. Hillesland produced the production wishbone by directly referring to the prototype wishbone." Id. Now that the Court has reconsidered its conclusion regarding the "directly refer" prong of the bona fide copy test, the Court must also reconsider its prior ruling in so far as the Court must reach the issue of whether the prototype and production wishbones are "virtually identical." To the

---

[1] Defendant Sears does not argue otherwise. See Def.'s Opp'n, docket no. 159, at 5.

ORDER  5–

extent the Court is now reaching the "virtually identical" prong of the bona fide copy test, the Court GRANTS IN PART Plaintiff's Motion for Reconsideration, docket no. 154.

A threshold question arises as to whether a jury or the Court should determine the "virtually identical" issue. "Where the parties dispute whether the deposit copy was bona fide, or was an impermissible reconstruction, the district court should first determine whether that question implicates the merits of the case. If it does not, the court should weigh the evidence that is submitted and make a factual finding on the copy/reconstruction issue." Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 164 (1st Cir. 2007) (cited by Lucky Break in a separate Motion for Reconsideration, docket no. 150, at 3-4). Because "the trial court's jurisdiction – its very power to hear the case"- is at issue, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Torres, 504 F.3d at 163; Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

In the cross-motions for summary judgment and the supplemental briefs regarding the Court's jurisdiction filed in the present case, the parties dispute whether the prototype and production wishbones are "virtually identical." This jurisdictional question does not implicate the merits of the case because the Court has already entered a ruling on creative content and originality of the prototype wishbone, and has therefore taken the copyrightability question away from the jury. Order of Dec. 4, 2007, at 15-20. Even if the copyrightability issue remained for a jury determination at trial, that issue is independent of the physical process by which the production wishbone was created. See Torres, 504 F.3d at 163. At trial, a jury will be asked to determine whether the Lucky Break prototype wishbone and the Sears wishbone are virtually identical, see Order of Dec. 4, 2007, at 23-25, but not whether the Lucky Break prototype and production wishbones are identical. As a result, the Court is permitted to weigh the evidence and make a factual finding on the copy/reconstruction issue. See Torres, 504 F.3d at 163-164.

ORDER   6–

It is undisputed that Lucky Break submitted a photocopy of its production wishbone to the U.S. Copyright Office with its application to register a copyright of the prototype wishbone, and did not submit a photocopy of the "original" prototype wishbone. See Rachman Decl., docket no. 160, Ex. 2 at 15 (Transcript page 49) (Lucky Break's counsel stating that "we submitted a production wishbone to the copyright office as our deposit material").[2] It is also undisputed that the production wishbone was created using its own set of graphite electrodes and mold, separate from the graphite electrodes and mold used to create the prototype wishbone, and that Mr. Hillesland's creative input occurred primarily through his manual alterations of the graphite electrodes. See Order of Dec. 4, 2007, at 4-8. When asked in his deposition "whether the hand changes [he] made on the production mold [were] the same as the ones [he] made on the prototype mold," Mr. Hillesland testified: "I don't know." Rachman Decl., docket no. 160, Ex. 1 (Hillesland Dep.) at 42:12-15. He later admitted in his deposition that there "could be variations" between the manual alterations that he made to the graphite electrodes for the prototype mold as compared to the manual alterations that he made to the graphite electrodes for the production mold. Id., Ex. 1 (Hillesland Dep.) at 48:11-19. The Court gives little weight to Mr. Hillesland's subsequent declaration statement, see Hillesland Decl., docket no. 108, ¶ 12, in which he states that he "made the same manual alterations to the [production] electrodes," because this statement contradicts his prior deposition testimony. See Kennedy, 952 F.2d at 266. Mr. Hillesland has consistently testified that there are resulting differences between the prototype and production wishbones, including the thickness, the parting line, and the height of the ejector pins. Id., Ex. 1 (Hillesland Dep.) at 40:4-41:11, 42:16-43:2, 49:8-10, 50:12-51:18; Hillesland Decl., docket no. 108, ¶ 12.

---

[2] Lucky Break appears to have wanted to register the prototype wishbone. The first page of Lucky Break's application to register a copyright states that "2004" was "the year in which creation of this work was completed." Ahroni Decl., docket no. 66, Ex. A. It is undisputed that Mr. Hillesland created the prototype wishbone mold between December 2003 and January 2004, and that he created the production wishbone mold between June 2005 and September 2005.

ORDER   7–

Although Mr. Hillesland has opined that the production wishbones were "effectively identical" to the prototype wishbones, and that in his mind, "the prototype and production Lucky Break Wishbones are the same wishbone sculpture," these are conclusory statements that are not entitled to much, if any, weight.  Such statements fail to refute the facts, outlined above, which demonstrate that the prototype and production wishbones are different sculptural works, created nearly two years apart from different graphite electrodes and molds, with admitted resulting differences.  Accordingly, the Court DENIES IN PART Plaintiff's Motion for Reconsideration to the extent Lucky Break moved the Court to conclude "that the existing deposit materials are sufficient to support a valid copyright registration," a conclusion that would have required the Court to find that the prototype and production wishbones are virtually identical.  The Court concludes that the prototype and production wishbones are not "virtually identical" for the purposes of copyright registration.

### D.     Conclusion

The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Reconsideration of Court's Order of 12/18/07, docket no. 154.  The Court grants in part the motion and concludes that the second "directly refer" prong of the bona fide copy test is met because Mr. Hillesland directly referred to the prototype electrodes when making the manual alterations to the production electrodes.  The Court grants in part the motion and reaches the "virtually identical" prong of the bona fide copy test.  The Court denies in part the motion and concludes that the first "virtually identical" prong of the bona fide copy test is not met because the prototype and production wishbones are different sculptural works, created nearly two years apart from different graphite electrodes and molds, with admitted resulting differences.

Accordingly, the existing deposit materials are not sufficient to support a valid copyright registration in Lucky Break's prototype wishbone, and Lucky Break cannot maintain an infringement action based on its current registration of the wishbone copyright.

ORDER   8–

See 17 U.S.C. § 411(a).  The Court does not have jurisdiction over Lucky Break's copyright infringement claim in the prototype wishbone.  The Court advises the parties that it will dismiss Lucky Break's copyright infringement claim in the prototype wishbone, see Second Am. Compl. ¶¶ 29-30, without prejudice, unless Lucky Break supplements its registration pursuant to 17 U.S.C. § 408(d) or registers the prototype wishbone with the U.S. Copyright Office within thirty days of the entry of this Order.  The Court directs Lucky Break to file a status report by **February 19, 2008** regarding any supplement to the current registration, or new registration of, the prototype wishbone.

### III.    Other Motions for Reconsideration

The Court previously deferred its ruling on the other two pending motions for reconsideration, docket nos. 147 and 150, until the Court's jurisdiction over Lucky Break's copyright infringement claim based upon the prototype wishbone was resolved.  Minute Order of Jan. 7, 2008, docket no. 158.  Because the Court has given Lucky Break thirty days to supplement its registration pursuant to 17 U.S.C. § 408(d) or register the prototype wishbone with the U.S. Copyright Office, the Clerk is directed to RE-NOTE the motions for reconsideration, docket nos. 147 and 150, to February 19, 2008.

IT IS SO ORDERED.

DATED this 18th day of January, 2008.

Thomas S. Zilly
United States District Judge

ORDER   9–