Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUCKY BREAK WISHBONE CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SEARS, ROEBUCK AND CO., a New York corporation; and YOUNG & RUBICAM, INC., a Delaware corporation,<br><br>　　　　　Defendants. | No. 2:06-cv-0312-TSZ<br><br>DEFENDANTS' MOTION *IN LIMINE* REGARDING PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON<br><br>Note on Motion Calendar:<br>**May 23, 2008**<br><br>ORAL ARGUMENT REQUESTED |

Defendant Sears Roebuck and Company ("Sears") and Young & Rubicam Inc., ("Y&R") (collectively, "Defendants") respectfully submit this motion *in limine* to preclude Plaintiff Lucky Break Wishbone Corporation ("Plaintiff") from asserting at trial a claim for actual damages as part of its copyright claims for the alleged infringement of the prototype wishbone and product warning. Defendants also seek to preclude the expert reports and testimony of Peter H. Nickerson and certain testimony of Ken Ahroni, Plaintiff's President.

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON
NO. 2:06-cv-0312

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800　F 206.516.3888

**PRELIMINARY STATEMENT**

Plaintiff claims in its initial disclosures that it is entitled to actual damages for a "lost licensing revenue of $344,000." (*See* Combined Declaration of Marc J. Rachman, dated May 15, 2008 ("MJR Dec."), Ex. 2 at 8.) Further, with respect to the product warning developed by Plaintiff's founder and President, Ken Ahroni, in connection with the Lucky Break wishbones (the "Product Warning"), Plaintiff claims that it suffered between $8,000 and $10,000 in actual damages as a result of the Defendants' alleged infringement. (MJR Dec. Ex. 7 at 11.) However, Plaintiff's claims for actual damages for the prototype wishbone and the Product Warning should be precluded as they are completely unreliable and speculative. Further, Nickerson did not have the experience to determine actual damages for copyrighted plastic works or product warnings, and he used flawed methodologies. Finally, Mr. Ahroni's testimony regarding what his hourly rate would be to consult on a Product Warning should be precluded as subjective and completely speculative.

**ARGUMENT**

**A. LEGAL STANDARD**

   *1.   Reliability of Expert Testimony*

Expert testimony may be admitted only when "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702 (2008). "[U]nder the Rules the trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420 (9th Cir. 1998). When expert testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question … the trial judge must

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON
NO. 2:06-cv-0312 – Page 2

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citation omitted). Further, highly speculative evidence is properly excluded where its potential to prejudice or confuse the jury outweighs any probative value that evidence might have. *See* Fed. R. Evid. 403; *U.S. v. Scholl*, 166 F.3d 964, 970-72 (9th Cir. 1999).

### 2. *Claim for Actual Damages*

Under the Copyright Act, "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Under Ninth Circuit law, when the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work." *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) (internal citations and quotations omitted). Excessively speculative claims of damages are to be rejected, and "the market value approach is an objective, not a subjective, analysis." *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002).

## B. PLAINTIFF'S CLAIM FOR ACTUAL DAMAGES FOR THE PROTOTYPE WISHBONE

Plaintiff submitted the expert report of Peter H. Nickerson in support of its claim for actual damages for the prototype wishbone ("First Nickerson Report"). However, because Nickerson did not apply the standards set forth in *Mackie* and *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 712 (9th Cir. 2004), his opinions are improper and should be excluded. Moreover, he was not qualified to opine on this issue. Thus, Nickerson's report and testimony should be precluded.

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON NO. 2:06-cv-0312 – Page 3

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1. *Nickerson's Opinion on Damages did not Comply with the Standards Under Ninth Circuit Law*

To determine actual damages, the Ninth Circuit has "endorsed a hypothetical approach: 'what a willing buyer would have been reasonably required to pay to a willing seller for [the owner's] work.'" *Mackie*, 296 F.3d at 916-17 (citations omitted) (finding that to determine damages one looks to what defendant "would have paid for a license to use" the copyrighted work.). Here, Nickerson stated that he "calculated the value of actual damages associated with the lost license fee and lost profits from that fee" and found that "[t]he direct loss to Lucky Break due to the infringement is the income Lucky Break would have received from Sears had ***Sears simply finished its [alleged] contract with Lucky Break*** and purchased the wishbones and their use rights directly from Lucky Break."[1] (MJR Dec. Ex. 8, "PN Rep." at 1-2 (emphasis added).) In addition, Nickerson testified that his calculation of damages in the amount of $344,000 is based on his determination of "monopoly rents." (MJR Dec. Ex. 10 "PN Dep. I" at 39.) According to Nickerson, monopoly rents are income earned because the copyright holder has "ownership in some sort of barrier to entry, either a legal ownership or a contrived ownership."[2] (*Id.*)

What Plaintiff *would have charged for its wishbone* or its purported *monopoly rents* in the prototype wishbone has no bearing on the market value to license the copyright in the prototype wishbone (*i.e.* what a willing buyer would pay a willing seller to license the copyright). *See Mackie*, 296 F.3d at 917. "The question is not what the owner would have charged, but rather what is the fair market value." *See On Davis v. The Gap, Inc.*, 246 F.3d

---

[1] In *Polar Bear*, the Ninth Circuit found that Plaintiff's quoted price for use of its copyright could be used as the market value for the license. 384 F.3d at 709. However, the quoted price in *Polar Bear* was to renew an existing license for use of the infringing footage. *Id*. Here, Plaintiff's quoted price (which was not a contract) was not to license the use of the prototype wishbone. Rather, the quoted price was for Plaintiff to produce one million wishbones, including costs for packaging, the header and pad printing. (*See* PN Dep. I at 62.) Moreover, Plaintiff has dropped its breach of contract claim from this action, presumably because it realized there was no basis for it.

[2] The assertion of rights akin to a monopoly, however, goes against the principles of copyright law. *See Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON NO. 2:06-cv-0312 – Page 4

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

152, 166 (2d Cir. 2001). Nickerson admittedly did not follow the approach set forth in *Mackie*. Indeed, Nickerson testified that *Mackie* and *Polar Bear* did not have any effect on his report. (PN Dep. I at 92.) Moreover, it is apparent that Nickerson and Plaintiff have confused the market value to license the prototype wishbone with the costs to manufacture and package 1 million wishbones, costs which Plaintiff did not incur and are unrelated to the market value of a license in the prototype wishbone design. *See Rondor Music Int'l Inc., v. TVT Records*, *LLC* No. CV 05-2909 (JTL), 2006 U.S. Dist. LEXIS 97118, at *13 (C.D. Cal. Aug. 21, 2006) (rejecting expert's calculation of damages because it was not based on a "reliable method").

Further, Nickerson's claim regarding actual "lost profits" is also spurious. Plaintiff's "financial losses were not [Sears'] making, and mere speculation does not suffice to link the losses to the infringement." *Polar Bear*, 384 F.3d at 710. Thus, Nickerson's report and opinion regarding Plaintiff's damages for Sears' alleged infringement of the prototype wishbone should be precluded.

 2. *Nickerson's Opinion was Speculative and Failed to Subtract Plaintiff's Estimated Costs*

In addition, Nickerson's opinion is speculative because he conceded that his damages calculation was a "maximum license value number" that failed to deduct Plaintiff's costs from Plaintiff's quote for the contract amount. (PN I Dep. at 79.) It is well-established Ninth Circuit law that "[e]xcessively speculative claims of damages are to be rejected." *Jarvis*, 486 F.3d at 533. Nickerson claims that his maximum calculation included costs that should be "backed out" of his determination, *i.e.*, what Plaintiff *would have* paid for manufacturing, packaging, the header and the pad printing on the plastic wishbone. (PN I Dep. at 62.) Nickerson stated that he included these costs because "[t]hey're tied in with the product, so there's not a license value associated with the

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON NO. 2:06-cv-0312 – Page 5

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

package, but that's how the licensed product is being delivered." (*Id.*)  However, Nickerson offered no support for this claim.

When asked why the costs for non-copyrightable items like the packaging, header and the pad printing should be included with the wishbone, Nickerson testified that "if somebody else can deliver these things or a competitive market could deliver them, those would not be part of the license infringement, and ***they would be subtracted off***." (*Id.* at 63 (emphasis added).)  However, as discussed above, it was Nickerson's job to determine what the market would charge to license the prototype wishbone design, not what Plaintiff's maximum charge could be to manufacture and package 1 million prototype wishbones.  *See Mackie*, 296 F.3d at 917.  Thus, the First Nickerson Report and Nickerson's testimony should be precluded for this additional reason.

### 3.     *Nickerson was not Qualified to Issue an Opinion on Actual Damages*

Finally, Nickerson conceded that his firm had been involved in only one prior copyright case and he did not have specific experience valuing licenses for copyright designs in plastic items or molds.  (PN Dep. I at 29 & 36.)  Further, he did no research in preparing his report other than reading "excerpts" of *Mackie* and *Polar Bear* (which he did not rely on) and a few emails produced in the litigation.  (*Id.* at 40 & 42.)  An "expert's testimony [on damages] must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."  *See Masterson Mktg., Inc., v. KSL Recreation Corp.*, 495 F. Supp. 2d 1044, 1050-51 (S.D. Cal. 2007).  Thus, the First Nickerson Report and Nickerson's testimony should be precluded for this reason as well.

### 4.     *Plaintiff Relies Solely on the First Nickerson Report For Actual Damages in the Prototype Wishbone*

Plaintiff claims in its initial disclosures that, "Lucky Break's actual damages pursuant to § 504 include lost licensing of $344,000," which is the number Nickerson

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S
CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT
REPORTS AND OPINIONS OF PETER H. NICKERSON
NO. 2:06-cv-0312 – Page 6

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

arrived at in his report. (MJR Dec. Ex. 2 at 8.) Thus, for all the reasons stated above, any claim for actual damages attributable to the prototype wishbone must be precluded as there is no reliable basis for asserting this number as a measure of the relevant value to license Plaintiff's prototype wishbone design.

### C. PLAINTIFF'S CLAIM FOR ACTUAL DAMAGES FOR THE PRODUCT WARNING

Plaintiff relies on another entirely speculative report of Nickerson ("Second Nickerson Report") to arrive at its actual damages on its Product Warning claim. (*See* MJR Dec. Ex. 9, "PN Rep. II.")

*1. Nickerson's Report did not Measure Actual Damages for a Product Warning Created by a Non-Attorney*

Plaintiff's Product Warning was allegedly created by Plaintiff's owner, Ken Ahroni, who is not an attorney and who did not seek the advice of an attorney in drafting the Product Warning. (*See* MJR Dec. Ex. 12, "KA Dep." at 26.) However, Nickerson testified that his opinion did not apply to nor did it provide an estimate for what it would cost a *non-attorney to draft* the Product Warning or a similar product warning. (*See* MJR Dec. Ex. 11, "PN Dep. II." at 31 & 44.) Instead, he opined on what an attorney would charge to research, prepare a memo and draft a Product Warning. (PN Rep. II at 1.) This is unrelated to what it would cost to license a product warning like Plaintiff's. Thus, because Nickerson's expert report did not determine the market value to license Plaintiff's Product Warning, it is not relevant and should be precluded.

*2. Nickerson was Not Qualified to Issue an Opinion on Actual Damages for a Product Warning*

Nickerson was also not qualified to issue an opinion on the value of a product warning. Nickerson admitted that his expertise was not required to call an attorney and ask for an estimate to draft a product warning (PN Dep. II at 25) or to determine how many hours it would take for an attorney to draft it, which is all he did to prepare his opinion. (*Id.*

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON
NO. 2:06-cv-0312 – Page 7

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

at 40-41.) Regarding his understanding of legal liability for product warnings, Nickerson testified that "I don't think I have an *academic set of information* on that that *would allow me to give an opinion one way or another* for any product." (*Id.* at 18. (emphasis added).) Merely being an economist does not qualify Nickerson to opine on the market value to license the Product Warning. *See Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1340 (7th Cir. 1989) (rejecting an economist's expert who did not do any economic analysis, but rather "examined materials produced in discovery and drew inferences from the record, speaking in legal rather than economic terms").

    3.     <u>Nickerson did not Use a Proper Methodology and his Opinion is Speculative and Unreliable</u>

Nickerson's entire methodology in determining the market value of a product warning was to obtain an estimate on how much it would cost to draft a product warning from **one** attorney and read e-mails from **two** other attorneys sent to Nickerson by Plaintiff's counsel, providing estimates for the cost to research, prepare a memo and draft a product warning. (PN Dep. II at 17, 33-35). Nickerson did not ask all the attorneys how much it would cost to draft *Plaintiff's Product Warning* or a similar warning, but rather how much it would cost to research, prepare a memo and draft a product warning in general.[3] (*Id.* at 22.) Further, Nickerson did not personally communicate with the attorneys that provided Plaintiff's counsel with estimates for how much it would cost to research, prepare a memo and draft a product warning, but instead relied on the information they provided to Plaintiff's counsel. (*Id.* at 33.) Moreover, one of the three attorneys wrote that typically product warnings were between $8,000 - $10,000 but "<u>this product seems</u>

---

[3] Simeon J. Osborn, one of the attorneys who provided an estimate to Plaintiff's counsel, wrote in a letter that "In order to execute the research involved for a product going on the market … to do additional research, to draft a report, and to perform any additional work which may be required in the process, including writing the actual warnings, it will total a cost of approximately $10,000." (*See* MJR Dec. Ex. 14.) Michael Burkhardt wrote that product liability lawyers in his firm "would expect on average that to research and prepare a products [sic] warning, you should expect between $8,000 - 10,000." (*See* MJR Dec. Ex. 13.)

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON
NO. 2:06-cv-0312 – Page 8

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

very simple and so it is possible that it would cost less, but this estimate is based on my partners' recent experience."[4] (*See* MJR Decl., Ex. 13 (emphasis added).) Remarkably, Nickerson completely ignores this exception in drafting his report. Moreover, without reviewing the Product Warning in this litigation, the estimates provided by the attorneys are completely unreliable and speculative. In addition, Nickerson conceded that "I can imagine these [product warnings] being 50 to hundred times as much in medical areas or airplane areas," but he did not ask or determine whether the attorneys' estimates were for complex medical product warnings or simple toys. (PN Dep. II at 36.)

Additionally, Nickerson's methodology was completely unreliable. First he only relied on three estimates. This is an insufficient number to determine the market rate to license such work, especially when he ignored one of the three estimates that specifically commented that the range should be lower. Second, Nickerson testified that he viewed only four websites and consulted with one attorney in one day, but did not refer to any actual research on product warnings. (*Id*. at 10-11 & 31.) Finally, he did little or no research on the economic impact of product warnings on toys (he did a majority of his research on the *medical industry*) and did no research on whether or not anyone ever even read the Product Warning. (*Id*. at 13-14.)

   4. *Plaintiff's Calculation of Damages Based on Ahroni's Hourly Rate is Completely Speculative*

Finally, Mr. Ahroni's testimony as to what he would charge to draft the Product Warning provides no acceptable alternative basis for calculating damages and is completely speculative. Plaintiff's claim for an alternative method of calculating damages has no basis in law, as Plaintiff's actual damages are measured by the market value not what Plaintiff or

---

[4] Nickerson received this email that was sent to Plaintiff's attorney from an attorney (Michael Burnhardt) at a different firm, who in turn asked a colleague of his (another partner at the firm) how much he would charge to draft a product warning. Nickerson did not even know the name of the partner who provided the estimate.

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S
CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT
REPORTS AND OPINIONS OF PETER H. NICKERSON
NO. 2:06-cv-0312 – Page 9

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

Ken Ahroni would have charged for creating the Product Warning. *Jarvis*, 486 F.3d at 533 (internal quotations and citation omitted). Moreover, Ahroni's consulting rate of $200 to $300 an hour is irrelevant because he has no background or expertise in drafting product warnings. Ahroni's *subjective* claim of what he would have charged for his services is prohibited under Ninth Circuit law. "Such an undertaking, unaided by expert testimony … would be tantamount to inviting the jurors to engage in speculation and conjecture." *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1106 (D. Ariz. 2006). Additionally, Plaintiff has never charged anyone to use its Product Warning and it is included in the price of the wishbone.[5] (KA Dep. at 98.) Thus, Ahroni's testimony on what his hourly rate would have been should be precluded.

> 5. *Plaintiff Relies Solely on the Nickerson Report II and Ahroni's Statements Regarding his Hourly Rate for Damages in the Product Warning*

Plaintiff relies solely on the Second Nickerson Report and Ahroni's statements regarding his hourly rate as a consultant to arrive at its claim for actual damages. (MJR Dec. 2 at 8.) Thus, for all the reasons stated in section C above, any claim for actual damages attributable to the Product Warning must be precluded.

## CONCLUSION

For all of the foregoing reasons, the Court should issue an order: (i) precluding Nickerson from testifying at trial regarding Plaintiff's claims for actual damages; (ii) precluding the use of the Nickerson Reports (First and Second) at trial; (iii); precluding

---

[5] *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003), which was cited by Plaintiff in its opposition to Defendants' motion for summary judgment on the Product Warning, does not support Plaintiff's claim regarding Ahroni's hourly rate being an acceptable method to calculate damages. In *McRoberts*, the court found that the jury's valuation of a computer software program was based on "sufficient evidence" and was not unduly speculative. That evidence included the defendant's licensing agreements with third parties and comparisons with other software providers. *Id*. at 567. Here, Lucky Break has offered nothing more than its own subjective claims of Mr. Ahroni's hourly rate – although Mr. Ahroni could recall only one instance in which he was involved in the creation of a product warning (for lighting). Further, Ahroni has never charged a fee for the creation of a product warning, and Lucky Break has no evidence of a how much non-lawyers charge for drafting product warnings. (*See* KA Dep. II at 99-101; PN Dep. II at 23.)

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S
CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT
REPORTS AND OPINIONS OF PETER H. NICKERSON
NO. 2:06-cv-0312 – Page 10

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

Plaintiff from claiming actual damages on its copyright claims[6]; and (iv) precluding Plaintiff's principal, Ken Ahroni, from testifying at trial regarding what he would have charged to create the Product Warning.

Dated this 15th day of May 2008.

        YARMUTH WILSDON CALFO, PLLC

By: */s/ Jeremy E. Roller*
    Richard C. Yarmuth, WSBA No. 4990
    Jeremy E. Roller, WSBA No. 32021
    925 Fourth Avenue, Suite 2500
    Seattle, WA 98104
    Telephone: 206.516.3872
    Fax: 206.516.3888
    yarmuth@yarmuth.com
    jroller@yarmuth.com

DAVIS & GILBERT LLP

By: */s/ Marc J. Rachman*
    Marc J. Rachman (pro hac vice)
    1740 Broadway
    New York, NY 10019
    Telephone: 212.468.4888
    Fax: 212.974.6938
    mrachman@dglaw.com

*Attorneys for Defendant*

---

[6] Because Plaintiff relied solely on the First and Second Nickerson Reports I & II in its Supplemental Initial Disclosures and Response to Interrogatories, it should be precluded from providing any testimony regarding its actual damages. (*See* MJR Dec. Ex. 2 at 8 & Ex. 7 at 11.)

DEFENDANTS' MOTION *IN LIMINE* RE PLAINTIFF'S CLAIMS FOR ACTUAL DAMAGES AND THE EXPERT REPORTS AND OPINIONS OF PETER H. NICKERSON
NO. 2:06-cv-0312 – Page 11

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888